UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TAMMY S. WELCH, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-384-GZS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge (i) failed to address two severe impairments, (ii) did not properly evaluate whether the plaintiff's impairments met or equaled the criteria of three listed impairments, (iii) made a flawed determination of the credibility of the plaintiff's allegations of pain, (iv) improperly rejected the residual functional capacity ("RFC") opinion of treating source Leslie C. Harding, M.D., (v) relied on unsupported vocational expert testimony, and (vi) relied on the plaintiff's capacity to perform two jobs that exceed her limitation to simple, repetitive

_____

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 22, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

instructions.  *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 13) at 5-15.  I find no reversible error and, hence, recommend that the decision be affirmed.

In so doing, I address a question left open in *Pepin v. Astrue*, Civil No. 09-464-P-S, 2010 WL 3361841 (D. Me. Aug. 24, 2010) (rec. dec., *aff'd* Sept. 16, 2010): whether this court should abandon its position that, for purposes of the application of Social Security Ruling 00-4p ("SSR 00-4p"), a limitation to simple tasks or instructions is in tension with a rating in the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") of a job as having a General Educational Development ("GED") reasoning level of 3.  *See Pepin*, 2010 WL 3361841, at *5 n.2; *see also, e.g., Hall-Grover v. Barnhart*, No. 03-239-P-C, 2004 WL 1529283, at *3-*4 (D. Me. Apr. 30, 2004) (rec. dec., *aff'd* May 24, 2004) (a GED reasoning level of 3 is seemingly inconsistent with a limitation to the performance of simple, repetitive tasks).

With the benefit of post-hearing briefs addressing this point, which I invited both sides to submit, *see* Defendant's Memorandum of Law ("Commissioner's Post-Hearing Brief") (ECF No. 18); Plaintiff's Supplemental Memorandum ("Plaintiff's Post-Hearing Brief") (ECF No. 19), I recommend that the court abandon its position that a GED reasoning level of 3 is in seeming conflict with a limitation to simple tasks and/or instructions, just as, in *Pepin*, it abandoned its position that a GED reasoning level of 2 was in apparent conflict with a limitation to simple instructions or tasks.  *See Pepin*, 2010 WL 3361841, at *2, *6.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had the severe impairments of right upper extremity fractures with multiple surgeries for right index finger extensor tendon tenolysis culminating in right index finger amputation, status post left femur fracture with open

2

reduction internal fixation and subsequent surgical removal of rod with residual pain, left upper extremity humerus fracture with residual pain, mood disorder, and post-traumatic stress disorder, Finding 3, Record at 13; that she did not have an impairment or combination of impairments meeting or medically equaling any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Finding 4, *id.*; that she retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she was limited to one-handed jobs with her non-dominant  (left) hand, using her dominant right hand as an assist only, required a sit-stand option at will, could never crawl or climb ladders, ropes, or scaffolds, could only occasionally bend, kneel, balance, or stoop, needed to avoid hazards in the workplace, and could understand, remember, and carry out simple, repetitive instructions and persist at that level of complexity for eight hours a day, five days a week on a consistent basis, Finding 5, *id.* at 15; that, considering her age (43 years old, defined as a younger individual, on the alleged disability onset date, January 8, 2007), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 20; and that she, therefore, was not disabled from her alleged disability onset date through the date of the decision, March 17, 2011, Finding 11, *id.* at 21.[2]   The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner.   20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

[2] The plaintiff was insured, for purposes of SSD benefits, through December 31, 2011, *see* Finding 1, Record at 13, subsequent to the date of the decision.  *See Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured[.]").

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Steps 2 and 3 of the sequential evaluation process.  Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* (quoting Social Security Ruling 85-28).

At Step 3, a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing.  20 C.F.R. § 404.1520(d); *Dudley v. Secretary of Health*

4

*& Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987).  To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings.  20 C.F.R. § 404.1525(c)(3).  To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).

## I.  Discussion

At oral argument, without waiving any other points of error, the plaintiff's counsel focused exclusively on two Step 5 arguments: that the administrative law judge had erred in (i) finding the plaintiff capable of performing the jobs of surveillance system monitor and call-out operator in the absence of any evidence that she could use her non-dominant hand to write, and (ii) failing to resolve a conflict between vocational expert Warren Maxim's testimony that a person limited to simple, repetitive instructions could perform those two jobs and the DOT rating of both as having a GED reasoning level of 3.  *See* DOT §§ 379.367-010, 237.367-014.  Hence, I turn first to these points of error.

### A.  Step 5 Points of Error

### 1.  GED Reasoning Level 3

SSR 00-4p provides, in relevant part:

The Responsibility To Ask About Conflicts

When a VE [vocational expert] or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:

> • Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

> • If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The adjudicator will explain in the determination or decision how he or she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011), at 246.

In reliance on Maxim's hearing testimony, the administrative law judge found the plaintiff capable of performing two representative occupations existing in significant numbers in the national economy, those of surveillance system monitor, DOT § 379.367-010, and call-out operator, DOT § 237.367-014.  *See* Record at 20, 51-52.  Before Maxim testified, the administrative law judge asked, "And do you understand that if you give us an opinion today which conflicts with the information contained in the Dictionary of Occupational Titles, you need to advise us of the conflicts and the basis of your opinion?"  *Id.* at 50 (underline in original).  Maxim responded, "I will, Your Honor."  *Id.*

Maxim did not identify any conflict between the GED reasoning levels of the jobs at issue and the limitation to simple, repetitive instructions, and the plaintiff's counsel did not ask Maxim whether there was any such conflict.  *See id.* at 50-64.

The DOT describes six GED reasoning levels, ranging from level 1, which requires a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job[,]" to level 6, which requires a worker to "[a]pply principles of logical or scientific thinking to a wide range of intellectual and practical problems"

6

and to "[d]eal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases[,]" as well as to "[d]eal with a variety of abstract and concrete variables" and "[a]pprehend the most abstruse class of concepts." Appendix C, § III to DOT. A job with a GED reasoning level of 3 requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*[3]

In *Hall-Grover*, this court first found that the demands of jobs described in the DOT as having GED reasoning levels of 3 "are seemingly inconsistent with a limitation to simple repetitive work." *Hall-Grover*, 2004 WL 1529283, at *3. It stated that, "[a]t the very least . . ., the administrative law judge should have queried [the vocational expert] as to whether his description of the two jobs in issue varied from that of the DOT and acknowledged and resolved any inconsistencies[.]" *Id.* at *4. It held that the administrative law judge committed reversible error in failing to do so. *See id*. This court reiterated that position in at least two subsequent cases. *See Carter v. Barnhart*, No. 05-38-B-W, 2005 WL 3263936, at *2-*3 (D. Me. Nov. 30, 2005) (rec. dec., *aff'd* Dec. 19, 2005) (administrative law judge committed reversible error in failing to query vocational expert regarding seeming discrepancy between limitation to performing only simple, repetitive tasks and notation in DOT that job had GED reasoning level of 3); *Trebilcock v. Barnhart*, No. 04-18-P-S, 2004 WL 2378856, at *3 (D. Me. Oct. 25, 2004) (rec. dec., *aff'd* Nov. 15, 2004) (administrative law judge committed reversible error in failing to

---

[3] The DOT defines GED reasoning level 2, which was at issue in *Pepin*, as: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Appendix C, § III to DOT. GED reasoning level 4 is defined as: "Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *Id.* GED reasoning level 5 is defined as: "Apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical instructions in mathematical or diagrammatic form. Deal with several abstract and concrete variables." *Id.*

query vocational expert regarding seeming inconsistency between limitation to "no more than simple instructions, occasionally detailed, not complex," and notation in DOT that job had GED reasoning level of 3) (citations and internal quotation marks omitted). *See also, e.g., Flagg v. Barnhart*, No. 04-45-B-W, 2004 WL 2677208, at *5 (D. Me. Nov. 24, 2004) (rec. dec., *aff'd* Dec. 14, 2004) (error in determining claimant's mental residual functional capacity was not harmless when all of jobs identified by vocational expert had GED reasoning levels of 2 or 3, which a claimant limited to the performance of simple instructions "would be incapable of performing").

As the commissioner recognizes in his post-hearing brief, there is a split of authority as to whether a job with a GED reasoning level of 3 is in "apparent conflict," for purposes of SSR 00-4p, with a limitation to simple tasks and/or instructions. *See* Commissioner's Post-Hearing Brief at 4-5. After careful consideration, I find the authorities relied on by the commissioner more persuasive than those cited by the plaintiff.

In her post-hearing brief, the plaintiff argues that *Meissl v. Barnhart*, 403 F. Supp.2d 981 (C.D. Cal. 2005), on which this court heavily relied in *Pepin* in concluding that there is no seeming inconsistency between GED level 2 jobs and a limitation to simple tasks or instructions, suggests that the dividing line between simple and more complex jobs is at GED level 2, with GED level 3 jobs being materially different. *See* Plaintiff's Post-Hearing Brief at 3-5. She quotes the following passage from *Meissel*:

> As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or-two-step instructions" in "standardized situations with occasional or no variables." In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with

problems involving several concrete variables . . . ." The *middle ground between these two points* is also where the vocational expert identified a job with the lowest reasoning development score that Meissl could perform, namely a stuffer.

*Id*. at 3-4 (quoting *Meissl*, 403 F. Supp.2d at 983; adding emphasis).[4]  She contends that, "[b]y use of the term 'middle ground,' the *Meissl* Court recognized that Level 3 Reasoning jobs require a materially higher level of reasoning abilities than Level 1 and Level 2 Reasoning jobs."  *Id*. Yet, the *Meissl* court was not called upon to decide whether a job with a GED reasoning level of 3 is in apparent conflict with a limitation to simple tasks or instructions.  To the extent that it suggested, in dictum, that there is such a conflict, it did not explain why.

The plaintiff also heavily relies on *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), in which the United States Court of Appeals for the Tenth Circuit reversed and remanded an administrative law judge's decision "to allow the ALJ [administrative law judge] to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE [vocational expert]."  *Hackett*, 395 F.3d at 1176.  Yet, apart from citing *Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997), the *Hackett* court did not explain why, in its view, a limitation to "simple and routine work tasks . . . seems inconsistent with the demands of level-three reasoning."  *Id*. *Lucy* sheds no light on the matter.  As this court observed in *Pepin*, *Lucy* "limits its discussion to the possible effect of a finding of borderline intellectual functioning on jobs rated at reasoning level 2 when no vocational testimony was provided."  *Pepin*, 2010 WL 3361841, at *5.

Other cases cited by the plaintiff that address GED reasoning level 3 also rely, in the main, on a purported facial inconsistency between that rating and a limitation to simple tasks and/or instructions.  *See* Plaintiff's Post-Hearing Brief at 5-6; *McHerrin v. Astrue*, Civil No. 09-

---

[4] I have corrected minor errors in the plaintiff's quotation of this passage.

2035, 2010 WL 3516433, at *5-*6 (E.D. Pa. Aug. 31, 2010) (citing, *inter alia*, *Hackett*); *Blakley v. Astrue*, No. C08-5186BHS, 2009 WL 279029, at *5-*7 (W.D. Wash. Feb. 3, 2009) (citing, *inter alia*, *Hackett* and *Meissl*).[5]

I find the authorities cited by the commissioner in support of the contrary view more well-reasoned and persuasive, in particular, *Auger v. Astrue*, 792 F. Supp.2d 92 (D. Mass. 2011), and this court's decision in *Fallon v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00058-JAW, 2011 WL 167039 (D. Me. Jan. 14, 2011) (rec. dec., *aff'd* Feb. 18, 2011).  In *Fallon*, this court did not address the issue left open in *Pepin*, whether a limitation to simple tasks or instructions created an apparent conflict with GED reasoning level 3, but, rather, whether a limitation to "basic" tasks of "up to four steps" did so.  *See Fallon*, 2011 WL 167039, at *5-*6.  Nonetheless, its reasoning is instructive in this context.  It observed:

> When it comes to the capacities to understand, remember, carry out, and persist with tasks, the Commissioner's regulations describe[] work instructions, tasks, and procedures in terms of being "detailed," "complicated," or complex," on the one hand, and "simple," on the other.  20 C.F.R. §§ 404.1569a(c)(1)(iii), 416.969a(c)(1)(iii); Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 12.00(C)(3).  Within this range exist a variety of potential functional restrictions, such as a restriction precluding fast-paced work or highly stressful work, or a restriction requiring a distraction-free environment, but the regulations do not afford any system to chart the range of concentration demanded by the most simple and the most complex unskilled work and they do not forbid the use of terms other than simple to describe where a claimant is on the continuum between the most simple and the most complex tasks involved in unskilled labor.  By comparison, the [DOT] breaks the reasoning demands of work into six levels, ranging from "simple one- and two-step instructions" at level one to "apprehend[ing] the most abstruse classes of concepts" at level six.  [DOT], Appendix C, § III. . . .
>
> Levels one through three of the [DOT's GED] reasoning spectrum all call upon the worker to apply "commonsense understanding" to carry out instructions.  At level one, the instructions are simple verbal instructions of one or two steps.  At

---

[5] The plaintiff also cites *Stokes v. Astrue*, 274 Fed. Appx. 675 (10th Cir. 2008).  *See* Brief at 5.  However, *Stokes* holds that a GED reasoning level of 2 is consistent with the demands of simple and routine work tasks.  *See Stokes*, 274 Fed. Appx. at 684 (citing *Hackett*).

> level two, the instructions are described as "detailed but uninvolved" and they
> may be presented orally or in writing. At level three, the detailed but uninvolved
> language is not repeated, but instructions may be presented in written, oral, or
> diagrammatic form. In addition to the detail of instructions and the manner in
> which instructions are presented, levels one through three all involve a
> standardized regimen, whereas at level four, the idea of "limited standardization"
> is introduced. At level one, there may be "occasional" variability, but variability
> is the exception. At level two, "a few concrete variables" will exist. At level
> three, "several concrete variables" will exist. *Id.*

*Fallon*, 2011 WL 167039, at *8. Against that backdrop, this court found a "basic, four-step"

limitation "neither clearly aligned with DOT reasoning levels two or three, nor clearly in conflict

with them." *Id.* at *9. It reasoned:

> An occupation involving a few variables might well entail four-step operations.
> So might an occupation involving several variables. Consequently, there is no
> clear conflict between the Judge's residual functional capacity finding and his
> acceptance of testimony concerning occupations with a reasoning GED level of
> three. For this reason, Ruling 00-4p does not require remand.

*Id.*

The foregoing analysis underscores the material nature of the distinctions between the

first three levels of GED ratings and the final three. The first three levels entail commonsense

understanding of instructions and dealing with problems involving, at most, several variables in

or from standardized situations. *See* Appendix C, § III to DOT. By contrast, levels 4 through 6

entail the application of various principles to define and/or solve problems, and they

contemplate, in the case of level 4, limited standardization and, in the case of levels 5 and 6, no

standardization. *See id.* This strongly suggests that the line between simple and more complex

instructions/tasks should be drawn at GED level 3, not GED level 2. *Accord Thacker v. Astrue*,

Civil No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) (rec.

dec., *aff'd* Feb. 6, 2012) ("Levels one, two and three all require the worker only to '[a]pply

commonsense understanding to carry out . . . instructions.' In contrast, levels four, five and six

are more complex, requiring the worker to '[a]pply principles' to problems.  Jobs classified at reasoning levels, one, two and three are consistent with a limitation to simple, unskilled work.") (citations omitted).

A limitation to simple, repetitive instructions is no more clearly in conflict with GED reasoning level 3 than is a limitation to basic tasks of up to four steps.  A limitation to simple, repetitive instructions does not necessarily preclude the application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[.]" Appendix C, § III to DOT.  Those instructions still could be "simple" and "repetitive."  Further, a person at level 3 is expected to deal with problems in a manner involving a limited universe of options ("several concrete variables in or from standardized situations").  *Id.*

For similar reasons, in *Auger*, the United States District Court for the District of Massachusetts discerned no inconsistency between a limitation to simple work and GED reasoning level 3.  *See Auger*, 792 F. Supp. 2d at 97.  The *Auger* court noted the "incongruity that exists between the Social Security regulations and the DOT[,]" with "no one-to-one parallel [to] be found between 'simple' as it is used under the regulations and the DOT's requirements[.]" *Id.* at 95-96 (quoting *Thompkins v. Astrue*, No. 09-C-1339, 2010 WL 5071193 (N.D. Ill. Dec. 6, 2010)).  The *Auger* court joined "the great weight of authority on this issue" in holding that no conflict existed between a limitation to "simple and unskilled" work and a GED level 3 classification.  *Id.* at 97.[6]

---

[6] Courts finding no conflict between GED reasoning level 3 and a limitation to simple, repetitive, and/or non-complex tasks or instructions include the United States Courts of Appeals for the Seventh, Eighth, Ninth, and Eleventh Circuits, *see Hurtado v. Commissioner of Soc. Sec.*, 425 Fed. Appx. 793, 794-95 (11th Cir. 2011) (limitation to simple, routine work not inconsistent with GED reasoning levels of 2 or 3) (per curiam); *Morris v. Commissioner Soc. Sec. Admin.*, 421 Fed. Appx. 693, 694 (9th Cir. 2011) (vocational expert reasonably thought, and administrative law judge reasonably agreed, that a job with a complexity level of three out of six does not present complex tasks of the type the plaintiff could not do) (memorandum decision); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (limitation to simple work did not conflict with GED reasoning level of 3); *Renfrow v. Astrue*, 496 (*continued on next page*)

I recommend that this court do the same.

In any event, as the commissioner alternatively argues, *see* Commissioner's Post-Hearing Brief at 7-9, even if there were a conflict between the limitation to simple, repetitive instructions at issue in this case and GED reasoning level 3, the plaintiff falls short of showing that it was "apparent" for purposes of SSR 00-4p. The administrative law judge asked Maxim, the vocational expert, at the outset of his testimony to identify any conflicts with the DOT, and Maxim agreed to do so. *See* Record at 50. Maxim identified no conflict between the limitation to simple, repetitive instructions and the GED reasoning level of 3 pertaining to both jobs at issue. *See id*. at 50-64. Nor did the plaintiff's counsel identify or inquire about any such conflict. *See id*. In such circumstances, because SSR 00-4p pertains only to *apparent* conflicts, a claimant waives a claim of failure to identify and resolve a conflict between vocational expert testimony and the DOT unless he or she "can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance[.]" *Burton v. Astrue*, No. 2:11-cv-174-GZS, 2012 WL 1184425, at *4 n.3 (D. Me. Apr. 6, 2012) (rec. dec., *aff'd* Apr. 24, 2012) (citation and internal quotation marks omitted).

<hr>

F.3d 918, 921 (8th Cir. 2007) (limitation against complex work did not conflict with GED reasoning level of 3), and the United States District Courts for the Southern District of California, the Eastern District of Missouri, and the District of Maryland, *see, e.g., Koontz v. Astrue*, Civil No. 08-2153-LAB (WVG), 2010 WL 3339388, at *9 (S.D. Cal. July 26, 2010) (rec. dec., *aff'd* Aug. 24, 2010) (limitation to simple, repetitive work did not conflict with GED reasoning level 3); *Robinson v. Astrue*, No. 4:08CV1980MLM, 2010 WL 481045, at *18 (E.D. Mo. Feb. 4, 2010) (limitation to understanding, remembering, and carrying out simple instructions and non-detailed tasks did not conflict with GED reasoning levels of 2 or 3); *Marshall v. Barnhart*, No. Civ.A. DKC 01-2211, 2002 WL 32488432, at *9-*10 (D. Md. Sept. 27, 2002), *aff'd*, 63 Fed. Appx. 171 (4th Cir. 2003) (limitation to performing simple, repetitive, 1, 2, 3 step tasks did not conflict with GED reasoning level of 3). Courts finding a seeming conflict include, in addition to the United States Court of Appeals for the Tenth Circuit in *Hackett*, the United States District Court for the Eastern District of California, *see Gonzalez v. Astrue*, No. 1:10-cv-01330-SKO, 2012 WL 2064947, at *5-*6 (E.D. Cal. June 7, 2012) (citing *Hackett* and caselaw from the United States District Courts for the Central and Southern Districts of California), and, in a decision predating *Koontz*, the United States District Court for the Southern District of California, *see Tudino v. Barnhart*, No. 06-CV-2487-BEN(JMA), 2008 WL 4161443, at *11 (S.D. Cal. Sept. 5, 2008) (citing, *inter alia, Hackett* and *Meissl*).

13

That was not the case here.  *See, e.g., Auger*, 792 F. Supp.2d at 97-98 ("[I]t is not enough for Plaintiff to point out that a conflict exists; he must also demonstrate that such conflict is 'apparent.'  The fact that there is such broad support for the Commissioner's position is telling, as such a conflict could not be deemed 'readily apparent' if most courts have found that none exists under these circumstances.") (citations omitted); *Simpson v. Astrue*, Civil Action No. 10-2874, 2011 WL 1883124, at *8 (E.D. Pa. May 17, 2011) ("any perceived inconsistency between a limitation to simple, routine tasks and a reasoning level of 3 is simply not egregious enough – either in number or in substance – to bring into question the ALJ's reliance on the expert testimony as a whole") (citation and internal quotation marks omitted); *Abel v. Astrue*, Civil Action No. 3:09cv327-TSL-FKB, 2011 WL 1099890, at *7 (S.D. Miss. Mar. 2, 2011) (rec. dec., *aff'd* Mar. 22, 2011) ("While certainly an argument can be made that the ability to perform only simple, repetitive tasks is inconsistent with Level 3 reasoning, the two are not in obvious, direct conflict."); *Fallon*, 2011 WL 167039, at *9 ("While there may be some question about whether a particular level three reasoning job can be performed by someone restricted to basic, four-step operations, Fallon was represented by counsel at her hearing and the Judge permitted Fallon's counsel to question the vocational expert.  There is an expectation that counsel will explore these concerns with the vocational expert at the hearing, not leave such matters to technical challenges before the courts.").

The plaintiff, accordingly, falls short of demonstrating entitlement to remand based on this point of error.

## 2.   Other Challenges to Reliance on Vocational Expert's Testimony

At oral argument, the plaintiff's counsel contended that the administrative law judge erred in finding his client capable of performing the jobs of surveillance system monitor and call-

out operator when there was no evidence of record that she could write with her non-dominant hand, which the vocational expert testified she would need to do in order to perform either job. *See also* Statement of Errors at 13-14.

The administrative law judge asked Maxim to assume a hypothetical claimant limited to "sedentary one-handed work[,]" explaining, "[t]here would be basically no use of the right hand or arm whatsoever for any task other than she could occasionally use the right hand as an assist without having to absorb weight with that hand, more as a steady kind of thing." Record at 51.

After Maxim named the two jobs at issue, the administrative law judge questioned whether "either of those jobs require any writing, because she would not be [able] to really write with the left hand, because that's her non-dominant[.]" *Id*. at 52. Maxim testified that both jobs required writing to some extent, which the hypothetical claimant would need to be able to do with her non-dominant hand, or neither job would work. *See id*. The administrative law judge further pressed Maxim as to the types of writing necessary in those positions. *See id*. Maxim stated that, for the job of surveillance system monitor, "some sort of brief recording" was necessary when issues arose, which he assumed that the hypothetical claimant could do with her non-dominant hand. *See id*. He stated that reports made by a surveillance system monitor "very likely" would take the form of a phone call, followed later by typing an incident report. *See id*. at 53. He testified that "some simple information recording" was needed for the job of call-out operator, which could be done by hand or by computer. *See id*. at 52-53.

In response to a follow-up question from the plaintiff's counsel regarding the call-out operator job, Maxim testified that nothing prohibited keyboarding with one hand but that, if a person could not write with her hand that she could use, she also would have difficulty

keyboarding. *See id.* at 60. He summarized, "in either case, without clarification by the Judge, I think that job becomes unsuitable." *Id.* at 60.

The administrative law judge never clarified to Maxim whether the plaintiff retained the ability to write or type with her non-dominant hand. *See id.* at 50-64. Nonetheless, as counsel for the commissioner rejoined at oral argument, the administrative law judge did not find the plaintiff incapable of writing or typing, *see* Finding 5, *id.* at 15, and there is record evidence that she was able to type and write, albeit with difficulty. In a Function Report dated March 16, 2009, the plaintiff described her activities as including using her computer, and stated that it was hard for her to write. *See id.* at 179, 183. In an occupational therapy discharge note dated April 21, 2009, the occupational therapist stated that the plaintiff was "able to write for short periods of time [but] does have some discomfort secondary to the wrist position." *Id.* at 1059. Finally, at her hearing, the plaintiff testified that, rather than typing when at the computer, she would "hunt and peck with the left [hand] more" and move her mouse with her right hand. *Id.* at 32. She testified that she played on her computer "a little bit until the pain gets to the point I just can't stand it no more . . . . Maybe an hour or so I'll play on the computer and then I take a break[.]" *Id.*

In view of this evidence, including the plaintiff's own testimony that she used her non-dominant hand to type, any error by the administrative law judge in failing to address this point was harmless.[7]

---

[7] The plaintiff also argued, in her statement of errors, that the administrative law judge relied, at Step 5, on unsupported vocational expert testimony, Maxim having been unable to identify any basis for his statements that a person with a restriction to working with her non-dominant upper extremity and a need to sit or stand at will could perform the jobs of surveillance system monitor and call-out operator. *See* Statement of Errors at 13-14. This argument is without merit. "A V[ocational] E[xpert]'s recognized expertise provides the necessary foundation for his or her testimony." *Decker v. Astrue*, Civil No. 09-641-P-S, 2010 WL 4412142, at *3 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)). Moreover, (*continued on next page*)

### B.  Remaining Points of Error

### 1.  Asserted Step 2 (Severity) Errors

The plaintiff argues that the administrative law judge erred in overlooking two severe impairments, migraine headaches and attention deficit hyperactivity disorder ("ADHD").  *See* Statement of Errors at 5-6.  She asserts that "[c]onsideration of these impairments would have likely resulted in a more restrictive RFC[,]" but fails to explain how or why.  *Id*. at 6.  That is an insufficient showing to merit reversal and remand on the basis of an asserted Step 2 error.  *See, e.g., Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

In any event, although the plaintiff testified that migraine headaches had previously caused her to miss time from work and would incapacitate her for as much as an entire day, *see* Record at 45-47, the voluminous record contains few notations of the plaintiff's headaches, none of which document symptoms of the severity described at hearing, *see, e.g., id*. at 963, 968, 1066.  With respect to her alleged ADHD, the plaintiff cites, *inter alia*, Kennebec Behavioral Health records that note a need to "rule out" that disorder.  *See* Statement of Errors at 6; Record at 871, 877, 921.  "An entry ruling out a particular ailment or condition is *not* a diagnosis of that ailment or condition."  *Coleman v. Astrue*, Civil No. 09-8-P-H, 2009 WL 3517583, at *2 (D. Me. Oct. 29, 2009) (rec. dec., *aff'd* Nov. 17, 2009) (citation and internal punctuation omitted)

---

Maxim did identify a basis for his opinion: that he saw nothing in the DOT job descriptions that was inconsistent with those restrictions.  *See* Record at 54-55, 58-59.

(emphasis in original).  She also cites a diagnosis of ADHD by a treating counselor, Gail Lewis, LCPC, along with a description of resulting symptoms.  *See* Statement of Errors at 6; Record at 1023-25.  However, a licensed clinical professional counselor is not an "acceptable medical source" for purposes of establishing the existence of an impairment.  *See* 20 C.F.R. § 404.1513(a).

Thus, any Step 2 error with respect to migraine headaches or ADHD is harmless.

## 2.  Asserted Step 3 (Listings) Errors

The plaintiff next contends that the administrative law judge erred in failing to consider whether her impairments met or equaled Listing 1.02 and concluding, without the benefit of a medical advisor, that they did not meet or equal Listings 12.04 or 12.06.  *See* Statement of Errors at 6-8.  But, the plaintiff does not explain how her condition should have been found to meet or equal any of these Listings.  *See id*.  The point, accordingly, is waived.  *See, e.g., Graham v. United States,* 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).

In any event, on the merits, the plaintiff falls short of demonstrating her entitlement to reversal and remand on this basis.  Listing 1.02B, the only arguably applicable subsection of Listing 1.02, requires "[i]nvolvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c."  Listing 1.02B.  Listing 1.00B2c defines an "inability to perform fine and gross movements effectively" as "an extreme loss of function of both upper extremities, *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  Listing 1.00B2c.  The record does not

disclose an extreme loss of function of the plaintiff's left upper extremity.  *See, e.g.*, Record at 1144 (notation by Dr. Harding that plaintiff could "use her left hand for light work all day"). There was no error in failing to consider the applicability of this listing.

The administrative law judge found that the plaintiff's mental impairments, singly and in combination, did not meet or equal the criteria of Listings 12.04 (affective disorders) or 12.06 (anxiety related disorders) on the bases, *inter alia*, that those impairments did not satisfy the so-called "paragraph B" criteria, which require at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. *See id*. at 14.  She found that the plaintiff had only mild restriction of activities of daily living, mild difficulties in social functioning, and moderate difficulties with concentration, persistence, or pace, and had experienced no episodes of decompensation. *See id*.

The plaintiff argues that the administrative law judge failed to factor in the psychological impact of her physical impairments, for example, the impact on her depression and anxiety of her inability to independently accomplish many activities of daily living as a result of her severe right upper extremity impairment, and the impact of pain on her ability to maintain a regular work schedule, as quantified by Dr. Harding in his RFC opinion.  *See* Statement of Errors at 7-8; Record at 1143.  She contends that it is "readily apparent" that such consideration would have affected the administrative law judge's assessment of the "paragraph B" criteria.  Statement of Errors at 7.

Nonetheless, the plaintiff points to no expert opinion that her physical impairments had a greater impact on the "paragraph B" criteria than the administrative law judge found.  As

discussed below, the administrative law judge implicitly and supportably rejected Dr. Harding's opinion that the plaintiff could not maintain a regular work schedule without unscheduled breaks.

The plaintiff finally suggests that the administrative law judge erred in failing to consider, at Step 3, the impact of her ongoing need for treatment on her ability to maintain a regular work schedule during the relevant period. *See id.* at 8. There are no criteria in Listings 1.02, 12.04, or 12.06 pertaining to a need to miss work to engage in treatment. *See* Listings 1.02, 12.04, & 12.06. To equal a listing, a claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The plaintiff does not explain, and it is not otherwise apparent, how a need for work-related absences attributable to treatment equals the criteria of the relevant listings.

### 3. Asserted Step 4 (RFC) Errors

The plaintiff next complains that the administrative law judge erred in (i) failing to conduct the multi-factorial analysis approved in *Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19, 29 (1st Cir. 1986), for assessing the impact of the plaintiff's claimed pain on her physical and mental RFC, and (ii) omitting any left upper extremity restrictions, despite the plaintiff's well-established limitations on the use of her left arm and shoulder. *See* Statement of Errors at 9-11.

*Avery* instructs that an adjudicator "be aware that symptoms, such as pain, can result in greater severity of impairment than may be clearly demonstrated by the objective physical manifestations of a disorder." *Avery*, 797 F.2d at 23 (citation and internal quotation marks omitted). "Thus, before a complete evaluation of this individual's RFC can be made, a full description of the individual's prior work record, daily activities and any additional statements

from the claimant, his or her treating physician or other third party relative to the alleged pain must be considered." *Id*. (citation and internal quotation marks omitted).

I find no error in the administrative law judge's assessment of the plaintiff's pain. The administrative law judge closely questioned the plaintiff at hearing regarding the degree of pain and restriction she had experienced since the January 8, 2007, motor vehicle accident that precipitated the instant disability claim. *See* Record at 30-36. She summarized the voluminous evidence of record describing the course of the plaintiff's treatment and her varying complaints of pain in the aftermath of that accident. *See id*. at 16-18. She supportably found that the plaintiff suffered from ongoing right hand/wrist pain and restrictions ruling out the use of that hand at work except as "an assist" and that, although the plaintiff's left humerus and femur fractures appeared to have healed uneventfully despite the plaintiff's report to the contrary, some residual pain at both injury sites limited her to sedentary work with additional postural restrictions. *See id*. at 18; *see also, e.g., id*. at 1142, 1144 (Harding RFC opinion dated February 9, 2011). Finally, she did assess a limitation related in part to residual pain in the plaintiff's left upper extremity – a limitation to sedentary work. *See* Finding 5, *id*. at 15. This limitation, in turn, was consistent with Dr. Harding's most updated RFC opinion. *See id*. at 1144-45 (plaintiff capable of "us[ing] her left hand for light work all day" and of meeting the demands of sedentary work).

Pain determinations – like credibility determinations in general – are "entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). That is the case here.

### 4. Treatment of Dr. Harding's Opinion

Finally, the plaintiff argues that the administrative law judge failed to address several of Dr. Harding's RFC opinions, specifically, that she (i) likely would not be able to sustain an ordinary work schedule and work pace without more than the minimum number and length of rest periods, (ii) likely would not be able to maintain regular attendance, (iii) could not lift more than eight pounds safely with her left hand, (iv) could not walk far, and (v) could not stand for more than 20 minutes or ride in a car for more than 30 minutes. *See* Statement of Errors at 11-13 (citing Record at 1068, 1143-46). She notes that Maxim testified at hearing that a need for unscheduled breaks would rule out regular work. *See id.* at 12 (citing Record at 53-54). She contends that the lack of any explanation for the implicit rejection of a treating source's expert medical opinion requires a remand. *See id.* at 12-13.

Dr. Harding's opinions that the plaintiff could not lift more than eight pounds safely with her left hand, could not walk far, could not stand for more than 20 minutes, and could not ride in a car for more than 30 minutes, recorded on December 14, 2009, *see* Record at 1068, were superseded by his RFC opinion dated February 9, 2011, in which he deemed her capable of sitting without restriction, standing for up to four hours a day in stages, for not more than 20 minutes at a time, and using her left hand for light work all day, *see id.* at 1144, and capable of performing the lifting, walking, and standing requirements of sedentary work as defined by the commissioner, *compare id.* at 1145 *with* 20 C.F.R. § 404.1567(a). The administrative law judge's RFC finding comports with these aspects of Dr. Harding's February 9, 2011, opinion. *See* Finding 5, Record at 15.

While the administrative law judge did implicitly reject Dr. Harding's opinion concerning the plaintiff's need for unscheduled breaks, *see* Record at 19 (adopting the Harding RFC opinion

to the extent consistent with the RFC found), she gave an adequate reason for doing so: that the evidence of record demonstrated few problems apart from right index finger and right wrist abnormalities, *see id*. In so doing, she supplied the requisite "good reasons" for rejecting (in part) a treating source opinion. *See, e.g.,* 20 C.F.R. § 404.1527(d)(2) (adjudicators will "always give good reasons in [their] notice of determination or decision for the weight [they] give [a claimant's] treating source's opinion"). No more was required.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 11th day of July, 2012.


/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge